UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JUDY DEYO,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SECURITY FIRST BANK,<br><br>                    Defendant. | 5:23-CV-05012-KES<br><br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT |

Plaintiff, Judy Deyo, sued defendant, Security First Bank, for various violations of the Age Discrimination in Employment Act of 1967 (ADEA), Title VII of the Civil Rights Act of 1964, and South Dakota state law. Docket 1. Deyo alleges that Security First engaged in sex-based and age-based discrimination, created a hostile working environment, retaliated against her, and constructively discharged her from her position as a managing agent at Security First's Rapid City office when it replaced her with a younger man. *See id.* Security First now moves for summary judgment on all counts. Docket 12. Plaintiff opposes the motion. Docket 20. After reviewing the parties' arguments and the record, the court issues the following order.

**BACKGROUND**

Viewing the record in the light most favorable to Deyo,[1] the court recites the following factual background:

---

[1] *See Weitz Co. v. Lloyd's of London,* 574 F.3d 885, 892 (8th Cir. 2009) (citation omitted).

In 2014, Bob Olson, Security First's Director of Insurance, hired 60-year-old Judy Deyo to work in Security First's Rapid City insurance sales office. Docket 13 ¶ 1; Docket 21 at 1; Docket 22-9 at 12-13, 15. Before her employment with Security First, Deyo owned and operated her own commercial insurance agency. Docket 22-9 at 9-11. In 2015, Deyo was promoted to managing agent of the Rapid City office. *Id.* at 32. As managing agent, Deyo supervised up to five employees at any given time. Docket 13 ¶ 2; Docket 21 at 1. Further, while not reduced to a writing, Deyo asserts that she committed to at least 10 years in the position of managing agent. Docket 22-9 at 17-18; Docket 21 at 4.

From 2017 to 2022, employees supervised by Deyo made repeated complaints about her management style. Docket 13 ¶ 3; Docket 21 at 1-2 (Deyo not disputing complaints were made). During this same period, at least six employees supervised by Deyo resigned citing Deyo's management as a reason for leaving. *See* Docket 16-1 at 1; Docket 16-6; Docket 16-8; Docket 16-10; Docket 16-13. Security First alleges a seventh employee resigned and another employee threatened to resign due to Deyo's management style, Docket 13 ¶¶ 4-5, but Deyo disputes this and claims the employee resigned due to vertigo and the other employee threatened to resign because she had seen an advertisement for her position at Security First for more money, Docket 21 at 2. These complaints were typically brought to Security First's Human Resource Director, Julie Benedict. *See, e.g.*, Docket 16-10 at 1. Deyo asserts that these complaints were never thoroughly discussed with her, and she was never

2

written up or reprimanded for the complaints or resignations. Docket 21 at 1-2. Deyo's supervisor, Olson, either had no recollection of discussing these complaints and resignations with Deyo or thought he or Benedict had conversations with Deyo about employee relations. Docket 22-11 at 23-26. Benedict indicated that she generally let Olson handle these issues and reported being frustrated that Olson failed to take the employee complaints about Deyo seriously. Docket 22-10 at 10-11, 17. Deyo noted that the only complaints reported to her involved an employee who claimed Deyo yelled and was verbally abusive toward her. Docket 22-9 at 40-42, Deyo asserts that she was never told that she needed to improve her interactions with her coworkers. *Id.* at 37-50.

Deyo notes that while she was generally unaware of the complaints and resignations against her management practices, a written evaluation from December of 2016 provided by Security First cites her performance as "exceed[ing] expectations." Docket 22-1 at 2. The only other written evaluation provided by Security First, which was undated, noted that Deyo "raises team spirit," "set[s] example for other employees," and "appreciate[s] team member's help and contribution." *See* Docket 22-2 at 2-3. Additionally, Deyo "received several compliments and endorsements from insurance company executives and reps praising [her] for turning around the reputation of the agency." Docket 22-1 at 2. Olson recalled that Deyo was "very personable" and both he and another coworker indicated that Deyo had good relationships with Security First's customers. Docket 22-11 at 27, 29; Docket 22-14 at 22.

3

Beginning in late 2021 or early 2022, Benedict, Gregory Hunter, the Chair of Security First's Board, and Marnie Hermann, Security First's Chief Banking Officer, made the decision to hire Brad Blumenthal to be the Rapid City office's managing agent. Docket 13 ¶¶ 6-7; Docket 21 at 2. Deyo asserts that Olson was involved in the decision to hire Blumenthal, Docket 21 at 2, a fact which Security Bank disputes, Docket 13 ¶ 9. Olson indicated that he did discuss hiring Blumenthal or demoting[2] Deyo with either Benedict or Hunter. Docket 22-11 at 33-35. Olson also stated that he "felt bad for Judy," and admitted that "[n]obody likes to be replaced." *Id.* at 34.

At the time he was hired as managing agent, Blumenthal was a male 62-year-old, and Deyo was 67 years old. Docket 13 ¶¶ 6, 8; Docket 21 at 2. Security Bank asserts that Blumenthal was hired because "[he] would be a good fit for the Rapid City Office and because of Deyo's problems managing her staff." Docket 13 ¶ 7. Deyo asserts that Blumenthal was hired to help Security First expand its commercial insurance line. Docket 21 at 2. Hunter stated that the management issues between Deyo and Security First's employees were "typical strife that happens sometimes between employees or a supervisor" as

---

[2] The parties dispute whether removing Deyo from her position as a managing agent and reclassifying her as a "senior agent" qualifies as a demotion. *Compare* Docket 14 at 20 (Security First arguing that Deyo was "reassign[ed]"), *with* Docket 20 at 9 (Deyo arguing she was demoted because her new position was a "non-supervisory, hourly position"). The court agrees with Deyo that reclassifying her as a senior agent was a demotion because she lost supervisory duties and was moved to an hourly wage. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1055 (8th Cir. 1997) (discussing that a *promotion* encompasses "additional supervisory duties and greater authority, [and moving] from hourly to salaried compensation").

evidence that Blumenthal was not hired because of Security First's concerns with her management style. Docket 22-13 at 8-9. Blumenthal had little to no managerial experience, and there were no other applicants for the position that Blumenthal was hired for because it was not advertised.[3] Docket 22-13 at 11-13; Docket 22-10 at 42.

On March 17, 2022, Benedict and Olson met with Deyo to inform her that "she was being named a Senior Agent and would no longer have the responsibility to supervise the two employees previously supervised by her." Docket 13 ¶ 12; Docket 21 at 3 (Deyo admitting she was notified). Deyo asserts she was not provided a specific reason for the demotion and was told that Security First was going to try a man in her position. Docket 22-9 at 93, 152. During the meeting, Deyo indicated that she looked at Olson and stated "[y]ou finally got what you wanted," because she knew he preferred male employees. *Id.* at 93. About two years prior to her demotion, Olson told Deyo that "he thought she should hire a younger male for the Rapid City Office."[4] Docket 13 ¶ 10; Docket 21 at 5.

---

[3] Deyo notes that Security First's employee handbook provides it is in Security First's best interest to encourage internal recruitment. Docket 21 at 6.
[4] Security Bank asserts that Benedict, Hunter, and Hermann were unaware of Olson's alleged statement at the time they decided to hire Blumenthal. Docket 13 ¶ 11. Deyo argues that neither Hunter nor Benedict testified to such, Docket 21 at 3, however, both Hunter and Benedict attested that they only became aware of Olson's statement after Deyo made the allegation in her current lawsuit. Docket 24 ¶ 6; Docket 25 ¶ 4.

During the demotion meeting with Deyo, Deyo was also informed she would not have a reduction in pay but would be paid on an hourly basis, and that she could remain in her same office. Docket 13 ¶ 12; Docket 21 at 3 (Deyo admits she was informed of hourly pay). Deyo asserts that her annual salary exclusive of commissions had been $65,666.80 and her new hourly position would pay $31.47 per hour. Docket 22-9 at 29. Deyo also asserts that her paid time off (PTO) was calculated differently, she had to clock in at work, she had to report to Blumenthal, and she had to ask for time off if necessary. *Id.* at 28-29. Security First asserts that Deyo's PTO was not calculated differently and Deyo was not required to "punch in and out in front of her coworkers." Docket 25 ¶¶ 9-12.

After being notified of the change in position, Deyo worked a few days prior to using her PTO to take time off from work. Docket 13 ¶ 13; Docket 21 at 3 (Deyo admits she worked only a few days). Deyo asserts that the demotion and replacement were "devastating" and "humiliating." Docket 21 at 3, 5. Blumenthal was given the larger office next to Deyo's office, which required her to remove some of her fitness equipment and other items in the previously unused office. Docket 22-10 at 41. There was a smaller office that Blumenthal could have used. Docket 22-12 at 36. On April 1, 2022, Deyo filed a claim with Security First alleging that she was subjected to a hostile work environment because her coworkers would "whisper" and not communicate with her. Docket 22-9 at 147-48. She also alleged that Benedict made negative, suggestive

comments about her.[5] *Id.* Security First allowed Deyo to take additional paid leave while it investigated her claim. Docket 13 ¶ 16; Docket 21 at 3. On April 19, 2022, after Security First determined there was not a hostile work environment, Security First's Director sent Deyo a letter advising her that Security First wanted to continue working with her and "would bring in an outside Human Resources professional to help address any concerns Deyo may have." Docket 13 ¶¶ 17-18; Docket 21 at 3. The following day, Deyo resigned without having returned to work. Docket 13 ¶ 19; Docket 21 at 3.

## DISCUSSION

### I.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonably jury could return a verdict for either party." *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022) (alteration in original) (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399,

---

[5] Deyo asserts that when Benedict was preparing the office next to Deyo for Blumenthal's arrival, Benedict stated, "[t]hose ribbons will be gone *too*." Docket 22-9 at 147. Deyo asserts that this statement implied that Deyo would also soon be gone. *Id.* Security First argues that the statement was not intended to apply to Deyo personally because the ribbons were a reference to items placed in the Rapid City office to keep its employees from being exposed to COVID-19. Docket 23 at 24. Security First asserts that the "ribbons were to be removed when concerns about COVID-19 abated." *Id.*

401 (8th Cir. 1995)). In ruling on a motion for summary judgment the "court must make all reasonable inferences in favor of the non-moving party[] but will not resort to speculation." *Hill v. Sw. Energy Co.*, 858 F.3d 481, 487 (8th Cir. 2017) (citation and internal quotation marks omitted). To avoid summary judgment, a non-moving party may not simply rest on the allegations in its pleadings, but instead must set forth specific facts, either by affidavit or other evidence, showing that a genuine issue of material fact exists. *Id.*

## II.    Age-Based and Sex-Based Discrimination

Deyo alleges that Security First engaged in age discrimination in violation of the ADEA and engaged in sex discrimination in violation of Title VII and SDCL § 20-13-10. Docket 1 at 5-8. Because "South Dakota courts examine claims under SDCL § 20-13-10 under a standard identical to that applied to Title VII claims," *Axness v. Aqreva, LLC*, 118 F. Supp. 3d 1144, 1157-58, (D.S.D. 2015), the court applies the same analysis to each of Deyo's sex discrimination claims, *see Huck v. McCain Foods*, 479 N.W.2d 167, 169 (S.D. 1991) (noting that "SDCL 20-13-10 is comparable to the corresponding provision in Title VII").

To survive summary judgment on her age and sex discrimination claims, Deyo must show "either direct evidence of discrimination or evidence . . . sufficient to create an inference of discrimination under the *McDonnell Douglas* burden shifting framework." *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014) (citation omitted) (Title VII); *Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021) (ADEA). Under *McDonnell Douglas*'s framework,

Deyo must first establish a prima facie case of unlawful discrimination. *Canning*, 995 F.3d at 611. Deyo's burden in establishing a prima facie case is low. *See Bunch v. Univ. of Ar. Bd. of T.*, 863 F.3d 1062, 1068 (8th Cir. 2017). If Deyo establishes a prima facie case of discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Canning*, 995 F.3d at 611. "This burden is not onerous." *Bone v. G4s Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012). If the employer supplies such a reason, "[Deyo] is then required to show that the employer's reason was pretext for discrimination." *Canning*, 995 F.3d at 611. The court addresses Deyo's claims for age and sex discrimination in turn.

### A. Prima Facie Case of Age Discrimination

"[T]he ADEA prohibits discrimination against employees, over the age of 40, because of their age." *Id.* at 610 (citation omitted). Because Deyo has not offered any direct evidence of age discrimination, she must establish a prima facie case of discrimination. *Id.* at 611. To do so, Deyo must show she (1) was at least over 40 years old; (2) was qualified for her job; (3) "suffered an adverse employment action"; and (4) "was replaced by someone substantially younger." *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012). Deyo must show by a preponderance of the evidence that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

Security First asserts that for purposes of its summary judgment motion, it "does not dispute that Deyo has satisfied the first three elements." Docket 14

at 21-22; Docket 23 at 13. Instead, Security First argues that Deyo has failed
to establish the fourth element because there is only a 5-year age difference
between Deyo and Blumenthal. Docket 14 at 21-22. Security First argues that
"[a]s a matter of law, a 'five-year age difference . . . is insufficient to establish a
*prima facie* case.' " *Id.* at 22 (quoting *Lewis v. St. Cloud State Univ.*, 467 F.3d
1133, 1136 (8th Cir. 2006). Deyo argues that the court should reject Security
First's argument that Deyo's replacement was not young enough to satisfy the
fourth element because the case law Security First relies upon does not
support its contention. Docket 20 at 10-11. Deyo argues that based on the
totality of the circumstances, the following facts support a prima facie case for
her ADEA claim: (1) there was a 5-year age difference between Deyo and
Blumenthal; (2) she was provided no reason for her demotion; (3) she was
unaware of complaints about her managerial style and given no opportunity to
improve; (4) she had a positive performance review; and (5) Blumenthal was
less qualified than her to take over her position. *Id.* at 12.

Here, the court agrees with Security First that Deyo has not established
her prima facie case because she has failed to show she "was replaced by
someone substantially younger." *Gibson*, 670 F.3d at 856. The Eighth Circuit
has held that a "five-year age difference is insufficient to establish a *prima facie*
case . . . and [has] voiced doubt about whether a nine-year age difference is
'sufficient to infer age discrimination.' " *Lewis*, 467 F.3d at 1134 (citations
omitted); *see also Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1412-13 (8th
Cir. 1997) (holding that a five-year age difference is insufficient to infer age

discrimination); *Hothem v. Schneider*, 865 F. Supp. 2d 962, 980 (D.S.D. 2012) (collecting cases suggesting that an age difference of less than ten years is insufficient to establish the fourth element). The Supreme Court has also indicated that "the replacement of a 68-year-old by a 65-year-old" is an example of "very thin evidence" to support this element of the prima facie case. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996). There is a five-year age difference between Deyo and Blumenthal. *See* Docket 14 at 21-22. Without more, this fact alone is insufficient to establish the last element of a prima facie case for age discrimination under the ADEA. *See Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007).

Deyo urges this court to look at the totality of the circumstances to infer that Security First discriminated against her based on her age. Docket 20 at 11. "With respect to the fourth element, [Deyo] argues that [her] evidence [of pretext] creates a genuine issue of material fact. Evidence of pretext, normally considered at step three of the *McDonnell Douglas* analysis, can satisfy the inference-of-discrimination element of the prima facie case." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). Because Deyo seeks to establish her prima facie case by relying on evidence of pretext, the court addresses her arguments on pretext as part of the discussion on sex discrimination.

### B. Prima Facie Case of Sex Discrimination

Because Deyo has not provided direct evidence of sex discrimination, she must establish a prima facie case of sex discrimination. *Robinson*, 753 F.3d at

754. To establish a prima facie case for sex discrimination under Title VII and SDCL § 20-13-10, Deyo must prove that "(1) she was a member of the protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of [sex] discrimination." *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023) (citation omitted). To establish an inference of sex discrimination, Deyo must show that "she was treated differently than similarly situated males" or show "some other evidence that would give rise to an inference of unlawful discrimination." *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005) (citation omitted). Such other evidence can include "biased comments by a decisionmaker." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).

Again, Security First does not dispute that Deyo has satisfied the first three elements for her prima facie case. Docket 14 at 22; Docket 23 at 13. Security First argues that Deyo has failed to satisfy the fourth element because she has "not presented any evidence that a 'similarly situated male employee' was treated differently than her.'" Docket 14 at 22. Instead of relying upon evidence that Security First has treated its male employees differently, however, Deyo argues that she has satisfied the fourth element because Olson had previously advised her to hire more male employees and during the demotion meeting, Olson told her Security First "was going to try a man in [her] position." Docket 20 at 15. Security First argues that even if these statements were made, it is immaterial because Olson was not involved in the process of hiring Blumenthal to take over Deyo's managerial role. Docket 23 at 19-21.

Further, Security First asserts that those involved in the process of hiring Blumenthal were unaware Olson made the alleged statement before Security First decided to hire Blumenthal. *Id.* at 20.

Deyo asserts that Security First's motion for summary judgment should be denied because a factual question exists as to whether Olson was involved in the decision to hire Blumenthal. Docket 20 at 15. And Deyo argues that while Benedict and Hunter attested that they were unaware of Olson's alleged statement, Security First should be held liable for Olson's statement because he is an agent of Security First. *Id.*

To make out a case of sex discrimination, Deyo must show that the alleged discriminatory statements were made by a decisionmaker. *See, e.g.*, *Shaffer v. Potter*, 499 F.3d 900, 904-05 (8th Cir. 2007) (holding that statements made by an employee who was not a decision-maker cannot be evidence supporting a prima facie case of sex discrimination under Title VII). While Deyo notes that there is a dispute as to whether Olson was involved in the decision-making process, she has offered no evidence of his involvement beyond his comment that he felt he had no choice in her demotion. *See* Docket 22-11 at 34. It is mere speculation on Deyo's part that Olson was involved in the decision to hire Blumenthal because both Benedict and Hunter deny his involvement in the process, *see* Docket 22-13 at 17-18; Docket 22-10 at 32-33, and Olson himself denies being part of the decisions to hire Blumenthal or demote Deyo, *see* Docket 22-11 at 27, 34. Olson's statement that he felt as though he had no choice in her demotion makes sense because he confirmed it

13

was not his decision and was instead informed by Benedict that Deyo would be replaced with Blumenthal in the role of managing agent. *See id.* at 27-28, 34-35. Without more, Deyo's allegation that Olson was involved in the decision-making process to either hire Blumenthal or demote her is insufficient to infer that Security First engaged in sex discrimination against Deyo. *See Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010) ("[S]elfing-serving allegations and denials are insufficient to create a genuine issue of material fact.").

Deyo also asks the court to rely upon evidence of pretext to prove the fourth element of her prima facie case. Docket 20 at 16-17. As with Deyo's claim for age discrimination, the court addresses her arguments for sex discrimination in the pretext section below. *See Lake*, 596 F.3d at 874 ("Evidence of pretext . . . can satisfy the inference-of-discrimination element of the prima facie case.").

### C. Legitimate, Non-Discriminatory Reason

Before discussing whether Deyo can prove the final element for her age and sex discrimination claims, the court first addresses whether Security First has provided a legitimate, non-discriminatory reason for Deyo's demotion. *See Canning*, 995 F.3d at 611. Security First alleges that it replaced Deyo because her "abrasive interactions with staff, lack of communication, lack of transparency, and failure to take responsibility of her mistakes . . . caused the Rapid City Office to hemorrhage employees and caused perpetual short-staffing issues." Docket 14 at 24. Security First cites the numerous complaints and resignations made by employees who Deyo supervised as evidence of the "toxic"

14

work environment Deyo created. *Id.*; *see, e.g.*, Docket 16-1 at 1 (exit survey citing management as the "most important factor that influenced [the employee] to leave Security First"); Docket 16-6 at 1 (employee letter detailing that Deyo was "unapproachable most of the time"); Docket 16-8 (exit survey discussing the poor communication that existed in the office due to Deyo's management). Security First asserts that this is the reason that Blumenthal was hired. *Id.* Because poor job performance can be considered a legitimate, nondiscriminatory reason for an alleged adverse employment action, *see Hannon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1047 (8th Cir. 2003), the court holds that Security First has provided a legitimate, nondiscriminatory reason sufficient under *McDonnell Douglas*'s framework.

### D. Pretext

Because Security First has provided a legitimate, nondiscriminatory reason for Deyo's demotion, the burden shifts to Deyo to establish that the proffered reason was not the true reason for the demotion because it was merely "a pretext for discrimination." *Kohrt v. MidAm. Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004) (citation omitted). "Although a plaintiff may establish pretext by showing that the employer did not truly believe the employee engaged in the conduct justifying [demotion], if the employer's proffered reason was truly . . . the reason for the plaintiff's [demotion], [the court] will not decide whether [that] reason was wise, fair, or even correct." *Canning*, 995 F.3d at 612 (internal quotation marks and citation omitted). To establish pretext, Deyo must show that Security First's proffered reason is false and "that age [and sex]

15

discrimination [were] the real reason[s]" for her demotion. *Id.* (quoting *Tusing v. De Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011)). Thus, Deyo's age and sex must have been "the factor[s] that made a difference" as to why she was demoted. *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 801 (8th Cir. 2014).

Deyo first argues that her favorable performance reviews and good relationships with customers shows that Security First's reason is pretextual.[6] *Id.* at 13. "[A] strong showing that the plaintiff was meeting [her] employer's reasonable expectations at the time of [demotion] may create a fact issue as to pretext when the employer claims that the employee was [demoted] for poor or declining performance." *Canning*, 995 F.3d at 613 (quoting *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084 (8th Cir. 2013)). While favorable performance reviews leading up to the employee's demotion can be evidence of pretext, *see, e.g., Parrish v. Immanuel Med. Ctr.*, 92 F.3d 727, 733 (8th Cir. 1996) (finding that plaintiff showed pretext, in part, by pointing to favorable evaluations

---

[6] Deyo also argues that "there is a question of fact as to whether Olson, who knew Deyo was [60] at the time of hire, agreed to Deyo working a 10-year period." Docket 20 at 13. While Deyo asserts that she was "2.5 years away from her 10-year mark," *id.*, "factors other than age, but which may be correlative with age, do not implicate the prohibited stereotype, and are thus not prohibited considerations" in an employment decision. *Schlitz v. Burlington N. R.R.*, 115 F.3d 1407, 1412 (8th Cir. 1997) (citation omitted). Thus, if Deyo is suggesting that Security First engaged in age discrimination based upon the fact that she was nearing retirement, while this fact is correlative with age, her nearing retirement alone does not prove that Security First discriminated against her because the ADEA requires discrimination to be based solely on age. *See Jankovitz v. Des Moines Indep. Comm. Sch. Dist.*, 421 F.3d 649, 655 (8th Cir. 2005).

leading up to her demotion), Deyo's performance reviews do not establish pretext here. Her dated performance review citing her performance as "exceed[s] expectations" was from 2016, *see* Docket 22-1 at 2, and her only other evaluation is undated, Docket 22-2 at 2-3. Additionally, while the undated review has some favorable performance markers for Deyo, it also indicates that her overall evaluation was "needs improvement." Docket 22-2. Further, as Security First notes, there is no indication that these reviews took place around the time that Deyo's management issues arose. Docket 23 at 6. Because the first employee resignation took place in 2017, Deyo's performance review from 2016 offers little support to establish that Security First's reason for demoting her was not because of issues with her management style. Additionally, even if Deyo's reviews indicated a positive performance history and that she maintained good relationships with her customers, "evidence of a strong employment history will not alone create a genuine issue of fact regarding pretext and discrimination." *Canning*, 995 F.3d at 613 (quoting *Main v. Ozark Health, Inc.*, 959 F.3d 319, 326 (8th Cir. 2020)).

Deyo next argues that Security First's reason for demoting her was pretextual because it failed to address its employees' complaints and resignations with Deyo. Docket 20 at 14, 16. Deyo argues that if Security First was concerned with her managerial practices, it should have disciplined Deyo or offered her some assistance to improve. *Id.* at 16. Security First argues that it did make attempts to speak with Deyo about the employee complaints and

17

resignations, and that even if it did not provide Deyo with adequate supervision or guidance, this would not be enough to establish pretext. Docket 23 at 8-9.

While the Eighth Circuit has found it relevant to consider whether an employer counseled the employee about improving their performance where it argues the employee was terminated or demoted for poor performance, it has only found pretext after considering a multitude of factors. *See, e.g.*, *Ridout*, 716 F.3d at 1084 (finding pretext because the employer failed to counsel its employee about his alleged poor performance and where other evidence suggested that the employee was a productive and satisfactory worker). In comparison, Security First did speak with Deyo on a few occasions about complaints with her management. Olson was primarily responsible for speaking with Deyo about these complaints, and he indicated that he spoke with Deyo about complaints but was uncertain how many times he had done so. Docket 22-11 at 25. On one occasion, Benedict spoke with Deyo to discuss an individual employee's filed complaint. Docket 22-10 at 16-17. This is not a case where Deyo was completely unaware of the complaints about her managerial style. Further, as noted above, there is evidence to suggest that there were issues with Deyo's management. Thus, even if Security First failed to discuss all the employee complaints and resignations with Deyo, that is not sufficient to establish that Security First's reason for demoting her was pretext.

Deyo next argues that Security First's reason for demoting her was pretextual because Security First offered conflicting reasons for why Blumenthal was hired. Docket 20 at 13. Deyo points to Hunter's testimony that

18

Blumenthal was hired to improve Security First's commercial insurance line and was not hired to replace Deyo. *Id.* at 16; Docket 22-13 at 18-20. Additionally, Deyo challenges Security First's judgment in hiring Blumenthal because Deyo argues he did not have sufficient commercial sales or management experience. Docket 20 at 13. Security First contends that Blumenthal was hired for a dual purpose: to improve its commercial insurance sales and to manage the Rapid City office. Docket 23 at 9-10. Deyo essentially appears to be challenging the wisdom of Security First's decision to hire Blumenthal because he had little experience selling commercial lines and in managing employees.[7] *See* Docket 20 at 13. The court, however, will not decide whether Security First's "reason was wise, fair, or even correct." *Canning*, 995 F.3d at 612. Additionally, even if Security First's true purpose in hiring Blumenthal was to improve its commercial insurance sales, this does not show that Deyo's age was the "but-for cause" of Deyo's demotion, *see Gross*, 557 U.S. at 177, or that Security First engaged in sexual discrimination against Deyo by replacing her with Blumenthal. Thus, Deyo's challenge to Security First's proffered reason on the basis that Blumenthal was inexperienced and was hired to help Security First's commercial insurance line does not establish pretext.

Deyo last argues that Security First's proffered reason is pretextual because Security First failed to follow its written policies regarding her

---

[7] Security First notes Blumenthal previously managed one employee and spent over a decade working in the commercial insurance industry. Docket 23 at 9.

demotion. Docket 20 at 16. An "employee may demonstrate pretext by showing that 'it was not the employer's policy or practice to respond to such problems in the way it responded in the plaintiff's case.'" *Ridout*, 716 F.3d at 1084 (quoting *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001)). Security First's employee handbook policy provides that demotions may be given "when an employee is 'pursuing career development' without a decrease in salary." Docket 22-8 at 28. Deyo argues that because there is no reference in the handbook to demoting an employee for any other reason, Security First's reason for demoting her is pretextual. Docket 20 at 16.

Here, Deyo has failed to establish pretext by arguing that Security First did not follow its employee handbook. The handbook provides that employees who are "pursuing career development" may accept a demotion without a change in salary. Docket 22-8 at 28. The court agrees with Deyo that the handbook does not include a provision detailing when Security First can demote an employee for any other reason. *See generally* Docket 22-8. But it is unclear why this would establish pretext. Employers may "choose how to run its business, including not to follow its own personnel policies regarding [demotion] . . . as long as it does not unlawfully discriminate in doing so." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) (*McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 863 (8th Cir. 2009)). "Even if the employer's acts are unfair, there has to be evidence connecting the unfairness to a discriminatory animus." *Id.* Deyo has failed to provide evidence that Security First's true reason in demoting her was based on her age or sex.

20

Because she has not shown that Security First has discriminated against her based upon her age or sex, Deyo has failed to show that her demotion was pretextual.

Because Deyo has failed to show that her poor performance as a managing agent was pretext for her demotion, Deyo has failed to establish the fourth element of her prima facie cases for age-based and sex-based discrimination. Thus, Security First is entitled to summary judgment on Deyo's claim for age discrimination under the ADEA and claims for sex discrimination under Title VII and SDCL § 20-13-10.

## III.    Hostile Work Environment

Deyo asserts that Security First created a hostile work environment based upon age, in violation of the ADEA, and a hostile work environment based upon sex, in violation of Title VII and SDCL § 20-13-10.[8] Docket 1 at 5-9. To prevail on a claim of hostile work environment under the ADEA, Title VII, or SDCL § 20-13-10, Deyo must show that "(1) [she] belongs to a protected group, (2) [she] was subjected to unwelcome harassment based on age [or] sex, (3) the harassment affected a term, condition, or privilege of [her] employment[,] (4) [her] employer knew or should have known of the harassment[,] and (5) the employer failed to take proper action." *Rickard v. Swedish Match N. Am.*, 773 F.3d 181, 184 (8th Cir. 2014) (citation omitted). To determine whether

---

[8] As noted above, because "South Dakota courts examine claims under SDCL § 20-13-10 under a standard identical to that applied to Title VII claims," the court applies the same analysis used under Title VII to evaluate Deyo's hostile work environment claim. *Axness*, 118 F. Supp. 3d at 1157.

harassment affected a term, condition, or privilege of employment, a court must "consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [the employee's] job performance." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015) (citation and internal quotation marks omitted). The harassment must "be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered." *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 922 (8th Cir. 2018) (internal quotation marks omitted).

Security First argues that Deyo has failed to show that "she has suffered *any* harassment because [of] her age or sex[,]" or that such harassment was severe or pervasive. Docket 14 at 16-17. Deyo asserts she was subjected to "unwelcome harassment when she was demoted and replaced by a younger male [and] expected to remain employed by Security First and report to her replacement as her boss in his larger office." Docket 20 at 19. Deyo claims this environment was "severe" because it was "devastating and embarrassing to Deyo, who, after 20 years in the insurance industry and almost 8 years working for Security First, was demoted without getting any chance to improve or even [given] any sort of warning." *Id.*

While Deyo belongs to a protected group under the ADEA and Title VII because she was a female over the age of 40 when the alleged conduct took place, *see* Docket 13 ¶ 8; Docket 21 at 2, under the totality of the

circumstances, Deyo's hostile work environment claims cannot survive summary judgment because—as explained below—there is no evidence in the record that she was subjected to any harassment motivated by her age or sex.

## A. Age-Based Harassment

In her claim for age-based harassment, Deyo appears to rely solely on the fact that she was replaced by Blumenthal, who was 5 years younger than her. Docket 20 at 19. This allegation alone is insufficient to establish a claim for age-based hostile work environment. *See EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 687 (8th Cir. 2012) ("[M]ore than a few isolated incidents are required to support a hostile work-environment claim") (internal quotation marks omitted). Even if this court were to assume that replacing Deyo with Blumenthal constituted a harassing action, "the conduct about which [Deyo] complains is not severe enough to support [her] hostile work environment claim." *Sellers*, 791 F.3d at 945. Because Deyo has failed to provide an example of how Security First engaged in age-based harassment, the court finds that no genuine issue of material fact exists as to Deyo's claim of hostile work environment under the ADEA. Thus, summary judgment is granted to Security First as to this claim.

## B. Sex-Based Harassment

To show sex-based harassment, Deyo can "(1) show the actions were motivated by sexual desire, (2) show [her] employer had a general hostility toward members of [her] sex in the workplace, and (3) offer evidence that similarly situated individuals of the opposite sex were treated more favorably."

*Rickard*, 773 F.3d at 185. Deyo points to Olson's statement that she should hire more men and the fact that Security First replaced her with a man as evidence of sex-based harassment. Docket 20 at 19.

For similar reasons as to why her claim for age-based harassment fails, Deyo has failed to establish a claim for hostile work environment based upon sex. Deyo only offers Olsen's statement that she should hire more men as evidence of sex-based harassment. *Id.* "A single offensive utterance or exposure to distasteful conduct ordinarily does not rise to the level of a Title VII violation." *Curran v. Bernhardt*, 2023 WL 2586085, at *13 (D.S.D. Mar. 21, 2023). Because Olsen's statement fails to constitute "severe or pervasive" harassment that is "objectively hostile," *Moses*, 894 F.3d at 922, the court finds that no genuine issue of material fact exists as to Deyo's claims of hostile work environment under Title VII or SDCL § 20-13-10. Thus, summary judgment is granted to Security First as to these claims.

## IV.    Retaliation

Deyo alleges that she was subjected to illegal retaliation under the ADEA, Title VII, and SDCL § 20-13-26. Docket 1 at 9-11. The ADEA "prohibits employers from taking adverse employment actions against employees because of their age." *Russell v. Rapid City Area Schs.*, 2021 WL 5180877, at *6 (D.S.D. Mar. 31, 2021). Title VII prohibits retaliation by an employer against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation,

24

proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Similarly, SDCL § 20-13-26 "prohibit[s] an employer from retaliating against an employee who engages in [an] activity protected under [SDCL § 20-13-26]." *Riggs v. Bennett Cnty. Hosp. & Nursing Home*, 915 N.W.2d 156, 159 (S.D. 2018).

In the absence of direct evidence of retaliation, claims of retaliation under the ADEA, Title VII, and SDCL § 20-13-26 are examined under the *McDonnell Douglas* burden shifting framework. *See Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007) (applying the *McDonnell Douglas* standard to retaliation claims under the ADEA and Title VII); *Davis v. Wharf Res. (USA), Inc.*, 867 N.W.2d 706, 716 (S.D. 2015) (providing the standard for retaliation claims under SDCL § 20-13-26). As such, Deyo must first establish a prima facie case of retaliation. *Stewart*, 481 F.3d at 1042-43. To do so, Deyo must show that "(1) she engaged in statutorily protected conduct; (2) she suffered a materially adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Thomas v. Corwin*, 483 F.3d 516, 530 (8th Cir. 2007). To satisfy the first element, Deyo must show that she "oppos[ed] an act of discrimination" or "participat[ed] in an investigation." *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 664 (8th Cir. 2021) (quoting *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002) (providing the definition for Title VII claims); *Russell*, 2021 WL 5180877, at *7 (reasoning that statutorily protected conduct under the ADEA includes an employee making statements that oppose acts of age discrimination); *Thomas*, 483 F.3d at 531 (assuming that employee's

25

complaints about discrimination constituted protected activity under the ADEA). Upon establishing a prima facie case, the burden shifts to the employer to produce some legitimate, non-discriminatory reason for the action. *See Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000). If the employer satisfies this burden, the plaintiff must show the proffered reason for the adverse action is pretext. *Id.*

To prove her claims under Title VII and SDCL § 20-13-26, Deyo asserts that she engaged in statutorily protected activity during the demotion meeting when she stated that Olson must be pleased that a man would be replacing her and that Olson "finally got what [he] wanted." Docket 20 at 20-21. Deyo argues that this gave Security First constructive knowledge that Deyo was engaging in protected activity. *Id.* Deyo also asserts that her demotion constituted an adverse employment action, which was causally connected to her statements because Olson wanted to hire a man. *Id.*

To prove retaliation under the ADEA, Deyo asserts that Olson was aware that Deyo was 60 years old when hired and that she intended to work at Security First for a period of 10 years. *Id.* at 21. Deyo asserts that replacing her with a younger man constituted statutorily protected activity. *Id.* Deyo argues that because Olson knew she was only 2.5 years away from her intended retirement, Security First demoted her, at least in part, due to her age. *Id.*

Here, the court agrees with Security First that Deyo has failed to establish her claims for retaliation under the ADEA, Title VII, and SDCL § 20-13-26 because Deyo has failed to show that she engaged in statutorily

26

protected conduct or that there was a causal connection between the alleged protected conduct and her demotion. As to Deyo's Title VII and South Dakota retaliation claims, Deyo does not allege that she participated in an investigation, and she has failed to explain how her statement to Olson constitutes opposition to an act of sex discrimination made unlawful under Title VII. *Lopez*, 989 F.3d at 664. So, Deyo has failed to show she was engaged in statutorily protected conduct. *See id.* Further, "alleged retaliation which precedes protected conduct cannot logically be used to show causation because a prior event cannot be caused by a later event." *Stewart*, 481 F.3d at 1044. Deyo's statements to Olson, which occurred after she was demoted, cannot serve as protected conduct that Security First retaliated against because there is no causal connection between this alleged protected conduct and Security First's decision to demote her. Thus, Deyo's retaliation claim under Title VII and SDCL § 20-13-26 cannot survive summary judgment.

As to Deyo's retaliation claim under the ADEA, Deyo has failed to explain how she has engaged in protected activity that Security First retaliated against. *See* Docket 20 at 20-21. Deyo has not alleged that she made a complaint or allegation to her employer prior to her demotion that opposed some alleged age discrimination. *See id.* Deyo has also failed to point to any authority that suggests an employer's knowledge of an employee's age constitutes protected activity. *See id.* As such, Deyo's retaliation claim under the ADEA cannot survive summary judgment. Thus, Security First is entitled to summary

27

judgment on Deyo's retaliation claims under the ADEA, Title VII, and SDCL § 20-13-26.

## V.    Constructive Discharge

To prevail on a claim for constructive discharge, Deyo must show that "(1) a reasonable person in her situation would find the working conditions intolerable, and (2) the employer intended to force her to quit." *Bell*, 60 F.4th at 1203 (citation omitted). "The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings." *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). Because Deyo resigned, she can satisfy the intent requirement by showing "that [Security First] could have reasonably foreseen that [Deyo] would quit as a result of its actions." *Sanders v. Lee Cnty. Sch. Dist.*, 669 F.3d 888, 893 (8th Cir. 2012) (citation omitted). An employee, however, must allow "her employer a reasonable opportunity to correct the intolerable condition before she terminates her employment." *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1132 (8th Cir. 2014).

Deyo argues that she was constructively discharged when she was replaced by a younger man because of alleged issues with her management. Docket 20 at 17-18. Deyo also cites "whispering" by her co-workers and comments made by Benedict as evidence that Benedict was working toward Deyo's termination. *Id.* at 18. Following her demotion, in the few days that Deyo was present in the Rapid City office, Deyo admitted during her deposition that her interactions with Blumenthal and her coworkers were "civil." Docket 22-9 at 108-09. Deyo also confirmed that she was unable to determine what

her coworkers were whispering about and that Benedict never explicitly said that Deyo would soon be gone. *Id.* at 147-48. Without evidence of more, the court holds that Deyo's working conditions were not so intolerable that she was forced to resign.

Moreover, in support of her constructive discharge claim, Deyo relies on the same allegations used for her hostile work environment claims. *See* Docket 20 at 17-19 (citing her demotion and alleged humiliation that followed as evidence supporting her claims for hostile work environment and constructive discharge). Because the court determined that these facts were insufficient to establish a hostile work environment claim, Deyo also has not shown constructive discharge. *See Parker v. USDA.*, 2025 WL 649898, at *5 (8th Cir. 2025) (holding summary judgment was appropriate on constructive discharge claim where plaintiff "premises her constructive discharge claim on the same allegations [that were] insufficient to establish a hostile work environment"); *see also Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004) ("A hostile-environment constructive discharge claim entails something more [than a hostile work environment claim]."). As such, because there is no dispute as to any material fact regarding Deyo's claim for constructive discharge, Security First is entitled to summary judgment on this claim.

## CONCLUSION

Because there is no genuine dispute of material fact for any of Deyo's claims, summary judgment is properly awarded to Security First. Thus, it is

ORDERED that Security First Bank's Motion for Summary Judgment

(Docket 12) is granted.

Dated March 11, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE